UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CITY OF SPOKANE, WASHINGTON, on behalf of itself and all others similarly situated,<br><br>            Plaintiff(s),<br><br>vs.<br><br>FEDERAL NATIONAL MORTGAGE ASSOCIATION a/k/a FANNIE MAE, a federally chartered corporation; FEDERAL HOME LOAN MORTGAGE CORPORATION, a/k/a FREDDIE MAC, a federally chartered corporation; and FEDERAL HOUSING FINANCE AGENCY AS CONSERVATOR FOR FANNIE MAE AND FREDDIE MAC,<br><br>            Defendants. | NO.  CV-13-0020-LRS<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** |

**BEFORE THE COURT** is Defendants' Motion to Dismiss Plaintiff's Amended Complaint, ECF No. 33, filed on March 15, 2013 and argued on May 29, 2013 in Yakima, Washington. Pursuant to Federal Rule of Civil Procedure 12(b), the Federal National Mortgage Association ("Fannie Mae"), the Federal Home Loan Mortgage Corporation ("Freddie Mac," and together with Fannie Mae, the "Enterprises"), and the Federal Housing Finance Agency as Conservator for Fannie Mae and Freddie Mac ("FHFA," and with the Enterprises, "Defendants") move for an order dismissing

ORDER - 1

Plaintiff's Amended Class Action Complaint (ECF No. 30) with prejudice.

## I. INTRODUCTION

Plaintiff sued the defendants in an effort to collect state and local real estate transfer taxes that plaintiff claims are owed for real property transfers made by defendants. Federal statutes mandate that Defendants "shall be exempt from all taxation . . . imposed by any . . . State, county, municipality, or local taxing authority" with a single, narrow carve-out that "subject[s]" the Enterprises' "real property" to state and local "taxation . . . to the same extent . . . as other real property is taxed." 12 U.S.C. §§ 1452(e), 1723a(c)(2), 4617(j)(2) (the "Exemption Statutes"). In an effort to get around the plain language of Exemption Statutes, plaintiff argues that when Congress exempted the defendants from "all taxation," it did not intend to exempt them from State and County real estate transfer taxes.

Defendants assert that Washington state tax and related "Local Option" taxes on real estate sales transactions (together, the "Transfer Tax") are not taxes on real property; they are excise taxes on the transfer of real property. See Wash. Rev. Code §§ 82.45.010, 82.45.060, 85.46.010. The Transfer Tax therefore does not fall within the carve-out in the Exemption Statutes for taxes on real property. Instead, the Transfer Tax falls within the broad sweep of the plain language of the Defendants' exemptions from "all [state and local] taxation." Despite the straightforward statutory language, Plaintiff claims

ORDER - 2

Defendants must pay the Transfer Tax.

The issue before us is whether defendants' exemptions from "all [state and local] taxation" include Washington State and County real estate transfer taxes. Defendants point out that to date, 13 federal district court decisions recently found that the Exemption Statutes preclude imposition of functionally identical transfer taxes on real estate transactions involving the Enterprises. See *Dist. of Columbia ex rel. Hager v. Fed. Nat'l Mortg. Ass'n*, 882 F. Supp. 2d 107, at 111 (D.D.C.2012); *Hertel v. Bank of Am.*, No. 11-cv-757, 2012 WL 4127869, at *3 (W.D. Mich.2012); *Nicolai v. FHFA*, No. 8:12-cv-1335, 2013 WL 899967, at *5 (M.D. Fla.2013); *Fed. Nat'l Mortg. Ass'n v. Hamer*, No. 3:12-cv-50230, 2013 WL 591979 (N.D. Ill.2013); *DeKalb Cnty. v. FHFA*, No. 3:12-cv-50227 (N.D. Ill. 2013); *Montgomery Cnty., Maryland v. Fannie Mae*, No. 8:13-cv-66 (D. Md. 2012); *Cape May Cnty., New Jersey v. Fannie Mae*, No. 12-cv-4712 (D.N.J.2013); *Montgomery Cnty Comm'n v. FHFA*, No. 2:12-CV-885, 2013 WL 1896256 (M.D. Ala.2013); *County of Oakland v. FHFA*, Nos. 12-2135, 12-2136, 2013 WL 2149964 (6th Cir. 2013); *Delaware Cnty., Pa. v. FHFA*, No. 2:12-cv-4554, 2013 WL 1234221 (E.D.Pa.2013); *Hennepin Cnty. v. Fannie Mae*, No. 12-cv-2075, 2013 WL 1235589 (D. Minn.2013); *Vadnais v. Fannie Mae*, No. 12-cv-1598, 2013 WL 1249224 (D. Minn.2013); *Athens-Clarke Cnty. Unified Gov't v. Fed. Hous. Fin. Agency*, No. 5:12-cv-355(MTT), 2013 WL 2102922 (M.D. Ga. May 14, 2013).

**II.    LEGAL STANDARD FOR MOTION TO DISMISS**

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a

ORDER - 3

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In considering such a motion, a court must accept all factual allegations in a complaint as true, but need not accept as true any legal conclusions. *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

### III. EXEMPTION STATUTES UNAMBIGUOUS

Defendants argue and this Court agrees, the statutes at issue here plainly state that defendants are exempt from "all taxation" imposed by the state or local taxing authority. See 12 U.S.C. § 1723a(c)(2)(Fannie Mae's charter); § 1452(e) (Freddie Mac's charter); § 4617(j)(2) (Agency exemption). The statutes do not define "all" or "taxation." Where terms are undefined, "[t]he everyday understanding should count for a lot," and we look to "regular usage to see what Congress probably meant." *Lopez v. Gonzales*, 549 U.S. 47, 53 (2006). "Taxation" is the "imposition or levying of taxes;" "the action of taxing or the fact of being taxed." Oxford English Dictionary 679, vol. XVII (2d ed. 1989).

"Shall" unambiguously expresses Congress's intent that the exemption be mandatory. See *Miller v. French*, 530 U.S. 327, 337 (2000). And "all" unambiguously "means all." *Knott v. McDonald's Corp.*, 147 F.3d 1065 (9th Cir. 1998). The ordinary meaning of "all" is "[t]he whole of," "every, all kinds, all sorts," and "any whatever." Random House Webster's Unabridged Dictionary 54 (2d ed. 2001). "'All' is an inclusive adjective that does not leave room for unmentioned exceptions." *Hertel* at *3, see *Nicolai* at *3.

Plaintiff argues when Congress enacts a statute exempting each

ORDER - 4

defendant from all state and local taxation, there is a hidden exception for certain kinds of tax, including excise taxes.  Plaintiff assumes a distinction exists between direct taxes and excise taxes which matters in the context of entity exemptions at issue in this case.  Plaintiff's reading of the statute, however, is not convincing as it would mean that when Congress exempts an entity from "all taxation" it is only exempting that entity from direct taxes.  The Supreme Court has recently reaffirmed there are only three types of direct taxes: capitations (taxes paid by every person "without regard to property, profession, or any other circumstance"), taxes on personal property, and taxes on real property.  See *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2598-99 (2012). The transfer taxes here are clearly not capitations, and the statutes here separately provide an exclusion for taxes directly on real property. Accordingly, the only direct tax remaining would be a tax on personal property. Congress would unlikely have said that defendants were exempt from "all taxation" if it only meant they were exempt from personal property taxes.  Plaintiff's argument that excise taxes and direct taxes are treated differently does not lead to a logical end and is not supported by the plain language of the statute.

The Court finds that a straight-forward interpretation of "all taxation" has to include the State and County real estate transfer taxes here, which impose a tax on the "seller or grantor" when a deed or other instrument of conveyance is recorded during the transfer of real property.  In other words, the unambiguous statutes lead to the conclusion that when Congress said "all taxation," it meant *all*

ORDER - 5

taxation. Because the statutes are clear, this Court will not second-guess Congress and create a new exception in the statutes for state and local real estate transfer taxes. The conclusion that the plain language of the statute should control here is reinforced by Supreme Court precedent. *See Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95 (1941).

Finally, plaintiff simply has not submitted any evidence specific to the statutes here, e.g., legislative history, that would suffice to overcome the plain language of the statute and establish that Congress used "all taxation" in some more specialized way.

**IV. CARVE-OUT CLAUSES DO NOT APPLY**

Defendants argue that Congress crafted but one exception in each Exemption Statute allowing Defendants' "real property" to be "subject to" taxation. 12 U.S.C. §§ 1452(e), 1723a(c)(2), 4617(j)(1), (2). This narrow carve-out defeats any attempt to infer a broader exception: "When Congress provides exceptions in a statute, it does not follow that courts have authority to create others. The proper inference ... is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth." *United States v. Johnson*, 529 U.S. 53, 58 (2000); see also *Hertel* at *3 (explicit exception in Exemption Statutes supports finding that there are no "unmentioned exceptions"); *Nicolai* at *3 (similar). No court has ever construed the language of the carve-out to include excise taxes like the Transfer Tax–rather courts have construed materially identical statutes as expressly providing that no tax other than that for real property may be imposed. *See Oakland Cnty. v. Fed. Hous. Fin. Agency*,

ORDER - 6

871 F. Supp. 2d 662, 667 (E.D. Mich. 2012) (transfer taxes are excise taxes, not taxes on real property); *Hager*, 882 F. Supp. 2d at 112 (determining that similar D.C. taxes are excise taxes on transfers, not taxes on the real property itself); *Hertel* at *6 (making same determination regarding Michigan transfer taxes); *Nicolai* at *2-3 (same); *Cnty. of Fairfax v. U.S. F.D.I.C.*, No. 92-0858(RCL), 1993 WL 62247, at *2, *5 (D.D.C. Feb, 25, 1993).

Plaintiff disagrees arguing that *United States v. Wells Fargo Bank*, 485 U.S. 351 (1988) confirms the understood meaning of "all taxation" as not encompassing indirect taxes such as the Transfer Tax. Plaintiff explains that in *Wells Fargo*, the Supreme Court determined that certain public housing obligations were not exempt from the estate tax, which is an excise tax. 485 U.S. at 355-56.  Plaintiff asserts that the *Wells Fargo* Court relied on no less than four prior Supreme Court decisions, dating back nearly a century, to determine that "all taxation" does not include excise taxes. *Id*.

In contrast, Defendants argue that as an excise tax, the Transfer Tax does not fall within the Exemption Statutes' singular, narrow exception for taxation on real property. The carve-out permits taxation of property itself, not taxation that relates to property or taxation of transfers of property. Defendants note that *Wells Fargo* draws a clear distinction between taxes levied on property and taxes levied on entities when they transfer property, and *Wells Fargo* dictates that the latter is not a tax on property. Washington's statutory taxation scheme confirms this distinction. All real property is subject to taxation under the Property Taxes statute. Wash. Rev.

ORDER - 7

Code § 84. By contrast, the Transfer Tax, triggered by the conveyance of real property, is assessed under the Excise Taxes statute. *Id*. at § 82.45. It is not a tax imposed on the property itself. *Id*. §82.45.010.

This Court agrees with defense based on the statutes' plain text. In granting each of the defendants an exemption, Congress explicitly created a carve-out from the "all taxation" language by permitting taxes on real property. But Congress did not provide a similar carve out for the type of transfer taxes at issue here. "When Congress provides exceptions in a statute, it does not follow that courts have authority to create others. The proper inference . . . is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth." *Johnson*, 529 U.S. at 58. Indeed, no court has ever construed the language of the carve-out to include excise taxes like the Transfer Tax at issue in the instant case.

**V.     EXEMPTION STATUTES ARE CONSTITUTIONAL**

Plaintiff's contend that the Exemption Statutes are not constitutional because the Enterprises are not federal instrumentalities but rather private entities.  Plaintiff argues that because the Enterprises are private entities, Congress is overstepping its bounds under the Interstate Commerce Clause and cannot legislate in an area purportedly reserved to the states.

Defendants disagree stating the Exemption Statutes apply regardless of whether the Enterprises are deemed federal instrumentalities because the Enterprises' undeniably broad exemption from "all [state and local] taxation" bars Plaintiff's claims. Defendants, citing *First Agricultural National Bank v. State Tax*

ORDER - 8

*Commission*, explain that the Supreme Court held in that case that it was unnecessary to reach the constitutional question of whether today national banks should be considered nontaxable as federal instrumentalities. 392 U.S. 339, 341 (1968).  Further, the *First Agricultural* court held that any changes to the "state taxation of national banks . . . must come from the Congress." *Id.* at 346. Defendants conclude where Congress has statutorily exempted an entity from taxation, it makes no difference whether the exempt entity is deemed a private enterprise as opposed to a federal instrumentality.

This Court finds Plaintiff's allegations to the contrary are flawed.  Defendant Fannie Mae is a corporation chartered by Congress to "establish secondary market facilities for residential mortgages," in order to "provide stability in the secondary market for residential mortgages," and "promote access to mortgage credit throughout the Nation." 12 U.S.C. § 1716. Defendant Freddie Mac is similarly a corporation chartered by Congress for substantially the same purposes as Fannie Mae. *Id.* § 1451.

Defendant FHFA, is an independent federal agency, created under the Housing and Economic Recovery Act of 2008, Pub. L. No. 110-289, 122 Stat. 2654, codified in part at 12 U.S.C. § 4617, et. seq.  The Director of FHFA placed Fannie and Freddie into conservatorships "for the purpose of reorganizing, rehabilitating, or winding up [their] affairs . . . ." 12 U.S.C. § 4617(a)(2). As Conservator, the FHFA succeeds to all of the "rights, titles, powers, and privileges" of Fannie and Freddie, and also has the power to "operate" them, "conduct all [of their] business," and "preserve and conserve" their "assets

ORDER - 9

and property." *Id*. § 4617(b)(2).

When Congress created defendants, it expressly exempted them from "all" state and local taxes except for taxes on real property. Fannie Mae's charter provides:

> The corporation, including its franchise, capital, reserves, surplus, mortgages or other security holdings, and income, shall be exempt from all taxation now or hereafter imposed by any State, . . . county, municipality, or local taxing authority, except that any real property of the corporation shall be subject to State, . . . county, municipal, or local taxation to the same extent as other real property is taxed.

12 U.S.C. § 1723a(c)(2).

Similarly, Freddie Mac's charter provides:

> The Corporation, including its franchise, activities, capital, reserves, surplus, and income, shall be exempt from all taxation now or hereafter imposed by any . . . State, county, municipality, or local taxing authority, except that any real property of the Corporation shall be subject to State, . . . county, municipal, or local taxation to the same extent according to its value as other real property is taxed.

12 U.S.C. § 1452(e).

Additionally, when Congress enacted the Housing and Economic Recovery Act, it granted the FHFA a similar exemption in its role as Conservator:

> The Agency [as Conservator], including its franchise, its capital, reserves, and surplus, and its income, shall be exempt from all taxation imposed by any State, county, municipality, or local taxing authority, except that any property of the Agency [as Conservator] shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed . . . .

12 U.S.C. § 4617(j)(2).

The Court finds that there is no requirement that an entity, such as the Enterprises, be a federal instrumentality in order to receive a

ORDER - 10

benefit involving a statutory exemption from taxation. Even in those Supreme Court cases[1] where federal contractors were determined not to be constitutionally immune because they were not "federal instrumentalities," Congress has the power to expand such immunity from state taxation. *See SEPTA v. Pa. Pub. Util. Comm'n*, 826 F. Supp. 1506, 1511 n.9 (E.D. Pa. 1993) (Congress acted within its Commerce Clause authority in enacting a statute exempting local commuter authorities that were not federal instrumentalities from state and local taxes); *New Jersey v. Consol. Rail Corp.*, 690 F. Supp. 1061, 1065-66 (Reg'l Rail Reorg.Ct.1988)(Congress can "exempt a private, for-profit corporation from state taxation.")

Finally, Congress's power is especially dispositive where, as here, Congress created the exempt entity to pursue a mission Congress deemed important. *See Carson v. Roane-Anderson Co.*, 342 U.S. 232, 234 (1952) (Congress validly provided immunity for Atomic Energy Commission's private, for-profit contractors).

It is clear Congress created the Enterprises to further the important national interest in facilitating affordable home mortgages. Thus, Congress had "the power to preserve and protect functions [it has] validly authorized" the Enterprises to undertake, regardless of whether they are federal instrumentalities. By enacting the Exemption Statutes, Congress provided a clear mandate that Defendants are exempt

---

[1] *Arizona Dep't of Revenue v. Blaze Constr. Co., Inc.*, 526 U.S. 32, 38 (1999) ("[w]hether to exempt [government contractor] from Arizona's transaction privilege tax . . . rests . . . with Congress"); *United States v. New Mexico*, 455 U.S. 720, 737 (1982) (Congress must act to grant tax immunity to federal contractors); *First Agricultural National Bank v. State Tax Commission*, 392 U.S. 339, 341 (1968).

ORDER - 11

from materially all state and local taxation.

The Court is sensitive to the current budgetary pressures on municipalities such as the City of Spokane here, as well as fiscal realities which are the by-product of the loss of monies resulting from foreclosures and subsequent property transfers by the Enterprises rather than by private homeowners. Overall, however, Defendants' arguments are in accord with the plain language of the statutes and with the Supreme Court jurisprudence. If this Court were to adopt the Plaintiff's arguments, it would have to ignore a common sense reading of the statutes and take a somewhat distorted view of precedent. In particular, Plaintiff's interpretation of *Bismarck* as applying only to federal instrumentalities simply is not supported by the text of that decision. Moreover, their reading of *Wells Fargo* as applying more broadly to tax exemption statutes involving property carries that decision too far, especially in light of the Supreme Court's failure to discuss or cite any of the *Bismarck* line of cases in *Wells Fargo*. Thus, the Court interprets the tax exemption statutes here as exempting Defendants from the Transfer Tax, following, as it must, *Bismarck*.

**VI.   CONCLUSION**

The Exemption Statutes' plain text requires that except for the narrow carve out provision, the Enterprises are exempt from all state and local taxation on the entities themselves, including excise taxes such as the Transfer Tax. Relying on the Exemption Statutes' unambiguous language, the Enterprises are statutorily exempt because the Exemption Statutes immunize the Enterprises from all taxation and

ORDER - 12

a transfer tax is "indisputably a tax on" the Enterprises that "thus falls within the statutory exemption." See *Hager*, 882 F. Supp. 2d at 112. Accordingly, the Court finds that Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted, and this action is therefore dismissed with prejudice.

**IT IS ORDERED** that:

    1. Defendants' Motion to Dismiss Plaintiff's Amended Complaint, **ECF No. 33**, filed on March 15, 2013, is **GRANTED**. Plaintiff's claims are hereby dismissed with prejudice.

    2. The file shall be **CLOSED** in this matter.

    **IT IS SO ORDERED.** The District Court Executive is directed to enter this Order.

    **DATED** this 28th day of June, 2013

*s/Lonny R. Suko*
_____
LONNY R. SUKO
UNITED STATES DISTRICT JUDGE

ORDER - 13